IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VIOLET GALLAGHER, :
:
    Plaintiff :
: No. 4:12-cv-00777
v. :
: (Judge Brann)
EAST BUFFALO TOWNSHIP, :
:
    Defendant. :

**MEMORANDUM**

January 3, 2014

For the following reasons, plaintiff Violet Gallagher's motion for reconsideration is denied.

**I.    Background**

On August 29, 2013, after holding that plaintiff Violet Gallagher (hereinafter, "Ms. Gallagher") could not as a matter of law prevail on her claim alleging that the Township violated the federal Clean Water Act, the Court granted defendant East Buffalo Township's (hereinafter, the "Township") motion for summary judgment.[1] (ECF Nos. 59-60).

---

[1] After granting summary judgment for the Township on the single claim over which this Court exercised independent jurisdiction, the Court declined to decide Gallagher's remaining claims.

1

In the August 29, 2013 memorandum[2] explaining its reasons for granting summary judgment in the Township's favor, the Court focused on what it perceived to be the parties's major contest: the meaning of the phrase "composed entirely of storm water" as the phrase is used in the relevant statute and regulations, 33 U.S.C. § 1342(p) and 40 C.F.R. § 122.26. Specifically, the memorandum was directed towards resolution of the parties's dispute over whether pollutant-laden storm water discharges from the Township's storm sewer system are properly classified as being "composed entirely of storm water" and, consequently, exempted from having to obtain a National Pollutant Discharge Elimination System (NPDES) permit in light of the Township's small size. See 40 C.F.R. § 122.26(a)(9)(i)(A)-(D) (permit is required for operator of municipal separate storm sewer system whose discharges are composed entirely of storm water if system is located in urbanized area, which the Township is not, or if designated by a permitting authority, which the Township has not been).

When the Court rendered its decision, each party had a case in its favor. Compare Envtl. Prot. Info. Ctr. v. Pac. Lumber Co., 301 F. Supp. 2d 1102, 1111

---

[2]The Court's August 29, 2013 memorandum recited the undisputed facts of this case and supplied a brief overview of the labyrinthine statutory/regulatory framework that governs. The Court suggests that the reader refer to the August 29, 2013 memorandum for factual and legal background as necessary.

(N.D. Cal. 2004) (to be "composed entirely of storm water," discharge cannot contain pollutants), with Rosemere Neighborhood Ass'n v. City of Vancouver, 2005 WL 2656995, at *4-*5 (W.D. Wash. Oct. 18, 2005) (storm water discharge containing pollutants is nevertheless "composed entirely of storm water" under certain circumstances).

Analyzing the issue at some length, see Gallagher v. E. Buffalo Twp., 2013 WL 4647377, at *5-*9 (M.D. Pa. Aug. 29, 2013), the Court disagreed with Ms. Gallagher's appealing though spurious contention that "[t]he phrase 'composed entirely of storm water' means what is says, storm water, not pollutants." To the contrary, the Court concluded that the statutory/regulatory scheme dictates that discharges "composed entirely of storm water" not only can, but must, contain pollutants to be exempted from the NPDES permit requirement (if a discharge contains no pollutants, then the discharger does not need a permit in the first instance, and thus a permit exemption is superabundant).

Further, the Court explained that, before the Township can be said to have violated the Clean Water Act for failure to obtain an NPDES permit, the relevant regulations provide that a citizen in Ms. Gallagher's position – i.e., concerned about the environmental impact of storm water discharges for which the Township is not otherwise required by statute/regulation to obtain a permit – must

3

successfully "petition the [EPA or state-level permitting authority] to require a NPDES permit" for the Township's storm water discharge. 40 C.F.R. § 122.26(f)(2). Only 180 days after the permitting authority notifies the Township of its agreement with Ms. Gallagher (or another petitioner) would the Township violate the law by not obtaining an NPDES permit. See 40 C.F.R. § 122.26(a)(9)(iii).

## II. Ms. Gallagher's Motion for Reconsideration is Denied

On September 12, 2013, Ms. Gallagher filed a motion for reconsideration of the Court's grant of summary judgment in the Township's favor. (ECF No. 62). Ms. Gallagher did not challenge the Court's interpretation of the relevant statute or regulations. Her ground for reconsideration was the Court's supposed failure to consider two of her arguments in opposition to the Township's motion for summary judgment. According to Ms. Gallagher, she:

> raised two arguments, based upon the facts of the case, that defeat Defendant's Motion – even under the Court's interpretation of the phrase "composed entirely of stormwater." First, Defendant's discharges here do not are not [sic] "composed entirely of stormwater" because they contain groundwater. Second, even if the proper interpretation of "composed entirely of stormwater" includes such pollutants as are normally incident to storm water runoff, that definition does not include Defendant's discharges. As Plaintiff's and Defendant's experts have opined, the way in which Defendant has channeled and discharged the storm water into the Tributary is causing a discharge of sediment that is not normally incident to storm water runoff.

4

(Pl. Supp. Br., Sept. 12, 2013, ECF No. 63 at 5) (hereinafter, "Pl. Supp. Br.") (emphasis in original)).

Because the Court agrees that it should have been clearer in rejecting Ms. Gallagher's arguments supra, the Court considers each argument in turn, taking up the second argument first.

### a. Ms. Gallagher's Second Argument for Reconsideration is Denied

The Court's analysis in its memorandum of August 29, 2013 effectively forecloses Ms. Gallagher's argument that the Township's discharges are not "composed entirely of storm water" because the design and construction of the Township's storm water management system (hereinafter, "MS4," which stands for municipal separate storm sewer system) causes the system to discharge an amount of sediment beyond that "normally incident" to storm water discharges. (See Pl. Supp. Br. at 11-16).

Neither the Court's memorandum nor the relevant statute/regulations say anything about an MS4's storm water discharges ceasing to be "composed entirely of storm water" once the quantity of pollutants discharged exceeds some "normal" amount. As explained in the Court's August 29, 2013 memorandum, all discharges "composed entirely of storm water" must contain some quantity of pollutants. And even when such discharges "contribute[] to a violation of a water quality standard

5

or [are] a significant contributor of pollutants to waters of the United States," 40 C.F.R. § 122.26(f)(2), they remain "composed entirely of storm water," although a permitting authority may, in an exercise of discretion, require permits for highly polluted storm water discharges, see 40 C.F.R. § 122.26(a)(9)(i)(D).[3]

While Ms. Gallagher may believe that the poor design of the Township's MS4 makes it a good candidate for subjection to the requirements of an NPDES permit, the applicable regulations put the prerogative for deciding such matters with the permitting authority. Ms. Gallagher cannot end-run the regulatory scheme by having this Court hold that the Township's storm water discharges are too polluted to be "composed entirely of storm water."

### b. Ms. Gallagher's First Argument for Reconsideration is Denied

Ms. Gallagher's argument that the discharges she complains of are not "composed entirely of storm water" because she has submitted evidence showing that the Township's MS4 receives ground water is more troublesome. Indeed, the Court's August 29, 2013 memorandum took note of the difficulty of squarely

---

[3] "On and after October 1, 1994, for discharges composed entirely of storm water, that are not required by paragraph (a)(1) of this section to obtain a permit, operators shall be required to obtain a NPDES permit only if . . . [t]he Director, or in States with approved NPDES programs either the Director or the EPA Regional Administrator, determines that the discharge, or category of discharges within a geographic area, contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States." 40 C.F.R. § 122.26(a)(9)(i)(D).

reconciling the phrase, "composed entirely of storm water," with other aspects of the relevant statute and regulations. See Gallagher, 2013 WL 4647377 at *9 n.6. Ms. Gallagher's counsel quite properly offers arguments that prey on the Court's uncertainty; nevertheless, the Court is not persuaded that the acceptance of ground water into the Township's MS4 disqualifies the Township from the permit exemption for discharges "composed entirely of storm water."

Ms. Gallagher's argument is straightforward. As the Court recognized in its August 29, 2013 memorandum, ground water that enters an MS4 is an "illicit discharge," defined, in relevant part, as "any discharge to a municipal separate storm sewer that is not composed entirely of storm water." From this, Ms. Gallagher reasons that, because ground water flows into the Township's MS4, and because ground water is (in regulatory parlance) "non-storm water," the discharges from the Township's MS4 cannot be "composed entirely of storm water" for purposes of the relevant statute and regulations. (See Pl. Supp. Br. at 5-11).

The Court rejects this argument because – like Ms. Gallagher's other arguments – it ignores the structure of the applicable statute and regulations.

If discharges from an MS4 ceased to be "composed entirely of storm water" once ground water (or another of the many types of illicit discharges) entered the MS4, with the consequence that 33 U.S.C. § 1342(p) and 40 C.F.R. § 122.26 no

longer governed the MS4's discharges, then there would be no purpose behind, for example, 40 C.F.R. § 122.26(d)(2)(iv)(B)(1), which requires the operator of an MS4 not exempted from the permit requirement to craft a program to "detect and remove . . . illicit discharges . . . into the storm sewer." In other words, Ms. Gallagher cannot be correct that the detection of any illicit discharge into an MS4 excludes that MS4 from coverage under 33 U.S.C. § 1342(p) and 40 C.F.R. § 122.26, even though coverage under those provisions is predicated on the MS4's discharges being "composed entirely of storm water." To give 40 C.F.R. § 122.26(d)(2)(iv)(B)(1) and other provisions of the relevant statute/regulations purpose, as the Court should strive to do,[4] there must be conditions under which an MS4's discharges are properly considered to be "composed entirely of storm water," even though the MS4's operator detects the entry of ground water (or another illicit discharge).

The Court is aware of no statute, regulation, or commentary that speaks to this issue – i.e., when discharges from an MS4 that receives ground water are nevertheless considered to be "composed entirely of storm water" – in relation to

---

[4] See Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 31 (3d Cir.1995) (internal quotation marks omitted) ("[A] basic tenet of statutory construction [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.")

an MS4 (such as the Township's) not otherwise required to obtain an NPDES permit under 33 U.S.C. § 1342(p) and/or 40 C.F.R. § 122.26.

But the Court is not completely without guidance. For MS4s required to obtain a permit by 33 U.S.C. § 1342(p) and/or 40 C.F.R. § 122.26, the EPA has explained that a conveyance ceases to be governed by these provisions only after the operator identifies ground water (or another listed illicit discharge) as a source of pollutants to waters of the United States (in the case of medium and large MS4s) or a significant contributor of pollutants to its MS4 (in the case of small MS4s) and nevertheless continues to accept the ground water thereafter. See National Pollutant Discharge Elimination System Permit Application Regulations for Storm Water Discharges, 55 Fed. Reg. 47990 (Nov. 16, 1990)[5]; Regulations for Revision of the Water Pollution Control Program Addressing Storm Water Discharges, 64 Fed.Reg. 68722, 68756 (Dec. 8, 1999).

---

[5] "Conveyances which continue to accept other 'non-storm water' discharges (e.g. discharges without an NPDES permit) with the exceptions noted above [(for certain non-storm water discharges, including ground water, not identified as a source of pollutants to waters of the United States or a significant contributor of pollutants to a MS4, depending on the size of the MS4)] do not meet the definition of municipal separate storm sewer and are not subject to section 402(p)(3)(B) of the CWA unless the non-storm water discharges are issued separate NPDES permits. Instead, conveyances which continue to accept non-storm water discharges which have not been issued separate NPDES permits are subject to sections 301 and 402 of the CWA." 55 Fed. Reg. at 48037. Originally, this commentary applied only to large and medium MS4s, but it is sensible to interpolate similar commentary regarding small MS4s.

The Court sees no reason why an MS4 not otherwise subject to the 33 U.S.C. § 1342(p) and/or 40 C.F.R. § 122.26 permit requirement – e.g., the Township's MS4 – should face a more stringent standard than MS4s that are. Thus, the question becomes whether Ms. Gallagher can direct the Court to evidence in the record showing that the Township has identified ground water entry into its MS4 as a source of pollutants to the waters of the United States or a significant polluter of its MS4. Only if so does the continued acceptance of ground water into the Township's MS4 exclude the Township from coverage of the statutory and regulatory provisions predicating coverage on discharges being "composed entirely of storm water."

A review of Ms. Gallagher's citations to the record reveals neither evidence distinguishing ground water (as opposed to polluted storm water) that enters the Township's MS4 as a source of pollutants to United States waters, nor evidence establishing ground water as a significant contributor of pollutants to the Township's MS4.[6] Accordingly, Ms. Gallagher has failed to establish that there is a

---

[6] The Court recognizes that the Township – being not otherwise subject to the NPDES permit requirement for its MS4 – may be under no obligation to determine the impact of ground water on waters of the United States or its MS4. Thus, evidence showing that the Township recognized ground water as a problem may be hard to come by. But Ms. Gallagher is not necessarily without recourse; in addition to filing a petition against the Township under 40 C.F.R. § 122.26(f)(2), she may be able to file suit against the source of the ground water.

genuine issue of material fact respecting whether discharges from the Township's MS4 are "composed entirely of storm water." Consequently, her evidence is insufficient to controvert the exemption of the Township's MS4 from the NPDES permit requirement and, in turn, insufficient to establish that the Township violated the Clean Water Act for failure to obtain a permit.

## III. Conclusion

For the foregoing reasons, Ms. Gallagher's motion for reconsideration is denied. An order follows.

BY THE COURT:


   s/ Matthew W. Brann
Matthew W. Brann
United States District Judge